IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DIMARZIO SWADE SANCHEZ,<br><br>Defendant. | CR 16-82-BLG-SPW-1<br><br>ORDER |

Defendant Dimarzio Swade Sanchez ("Sanchez") is charged with First

Degree Murder for the death of R.R., who was found strangled and burned in a

field within the exterior boundaries of the Crow Indian Reservation. (Docs. 1 and

16). Sanchez has moved under the Fifth and Sixth Amendments to suppress

statements made to law enforcement. (Doc. 54).

On December 9, 2016, the Court held an evidentiary hearing. The Court

heard testimony from Bureau of Indian Affairs Special Agent John Dodd ("Agent

Dodd"), Bureau of Indian Affairs Special Agent John Grinsell ("Agent Grinsell"),

and Northern Cheyenne Tribal Lay Advocate Joe Waters ("Waters"). Having read

and reviewed the parties' submissions and having heard the testimony of the

witnesses noted above, the Court DENIES Sanchez's motion.

**I.    Statement of facts.**

On the morning of April 20, 2016, Sanchez was arrested by tribal authorities on a bench warrant issued by the Northern Cheyenne Tribal Court for failing to appear in court on an unrelated charge. (Doc. 77-1 at 1). Sanchez was booked and held in custody at the tribal jail. (Doc. 77-1 at 2).

Later that day, around 2:00 PM, Agent Dodd and Agent Grinsell arrived at the tribal jail and asked if Sanchez would answer some questions. Sanchez agreed to speak with them. (Doc. 101-1 at 6). Sanchez, Agent Grinsell, and Agent Dodd went to a room to speak. Both Agent Grinsell and Agent Dodd assured Sanchez he could stop speaking with them at any point. (Doc. 101-1 at 6-7). Agent Dodd provided Sanchez with a statement of rights. (Doc. 101-1 at 9; Doc. 57 at 7). The following exchange occurred:

| | |
|---|---|
| Sanchez: | Won't I get a lawyer? |
| Agent Dodd: | Do you have one? |
| Sanchez: | Yeah. |
| Agent Dodd: | Who is your lawyer? |
| Sanchez: | Joe Waters, bestest lawyer on Lame Deer Res. |
| Agent Dodd: | Okay. Have you – have you already spoken to Joe? Does he know he's your lawyer? |
| Sanchez: | Yeah, he knows he's my lawyer. |
| . . . | |
| Agent Dodd: | This? Okay. All right. So we make contact with Joe then? |
| Sanchez: | Yeah. |
| Agent Dodd: | Okay. |
| Agent Grinsell: | He's not a lawyer, but, he's – he's a lay advocate. |
| Agent Dodd: | He's a lay advocate for here? |
| Sanchez: | Yeah. |
| Agent Dodd: | So is Joe who you want? |
| Sanchez: | I don't know – yeah. |

| Agent Dodd: | Okay. All right. Well, I tell you what, we'll try to make contact with Joe and have him make contact with you and you guys can discuss it, okay? |
| Sanchez: | All right. |

(Doc. 101-1 at 9-11). Sanchez, Agent Dodd, and Agent Grinsell discussed how to contact Waters. (Doc. 101-1 at 11-16). Agent Dodd and Agent Grinsell told Sanchez they would look for Waters. (Doc. 101-1 at 14-16). The agents terminated the interview at 2:14 PM. (Doc. 101-1 at 16; Doc. 57 at 7).

Shortly thereafter, Agent Dodd and Agent Grinsell located Waters. Waters spoke with Sanchez. (Doc. 101-1 at 17). Waters contacted Agent Dodd and Agent Grinsell and told them Sanchez would speak to them with Waters present. (Doc. 101-1 at 17). Agent Dodd provided Sanchez with a statement of rights and waiver. (Doc. 101-1 at 18). Sanchez signed the statement of rights and waiver and Waters signed as a witness. (Doc. 101-1 at 18; Doc. 57 at 7). Agent Dodd informed Sanchez his rights were "still applicable" and that Sanchez was "free to leave this interview at any time." (Doc. 101-1 at 18-19). Waters advised Sanchez "[y]ou may stop talking any time." (Doc. 101-1 at 19). Agent Dodd and Agent Grinsell questioned Sanchez. The agents terminated the interview at 4:34 PM. (Doc. 101-1 at 83; Doc. 57 at 7).

Around 5:40 PM, Agent Dodd and Agent Grinsell learned new details about the investigation. Agent Dodd contacted Waters to ask if Sanchez would answer a follow-up question. (Doc. 101-1 at 83-84). Waters stated he would not be

available but gave the agents permission to speak with Sanchez. (Doc. 101-1 at 83-84). Agent Dodd and Agent Grinsell sat down with Sanchez for a third time. The following exchange occurred:

| | |
|---|---|
| Agent Dodd: | Right? Just – okay. I went to go see Joe, your representative. |
| Sanchez: | Yep. |
| Agent Dodd: | Joe couldn't be here, so I asked permission to speak with you, and he said go ahead. And I have to legally be honest when I tell you that, because I cannot speak with you without his consent. |
| Sanchez: | Yeah. |
| Agent Dodd: | And Joe stated to go ahead and speak with you again. We had a follow-up question to ask you, but remember the same rights are still applicable. You have the right to remain silent, anything you say can and will be used against [you] in a court of law. You have a right to an attorney, and to have him present here. You can stop talking at any time. You came in here this time without any shackles or handcuffs; is that correct? |
| Sanchez: | Yeah. |
| Agent Dodd: | Okay. You're going to be free to leave this room, I'll just escort you back over into the correction side, okay? If you want to stop talking. But having these – these rights in mind, will you agree to speak with us again? |
| Sanchez: | Yeah. |

(Doc. 101-1 at 83-84). Agent Dodd provided Sanchez with another statement of rights and waiver. (Doc. 101-1 at 84). Sanchez signed the statement of rights and waiver. (Doc. 101-1 at 84; Doc. 57 at 3). Agent Dodd and Agent Grinsell questioned Sanchez. The agents terminated the interview at 5:50 PM. (Doc. 101-1 at 95).

## II.  Standard of review.

The Government bears the burden to show by a preponderance of the evidence that Sanchez's statements were voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). Whether a confession is voluntary or coerced is reviewed de novo. *U.S. v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004). Factual findings are reviewed for clear error. *Crawford*, 372 F.3d at 1053.

## III.  Discussion

Sanchez argues his statements to the agents must be suppressed for three reasons. First, Sanchez argues he unambiguously requested an attorney under *Davis v. U.S.*, 512 U.S. 452, 459 (1994), but was denied his right to an attorney when the agents provided him with Waters, a tribal lay advocate. Second, Sanchez argues his statements were involuntary. And third, under the Sixth Amendment, Sanchez argues law enforcement was required to provide him with counsel because the interview was an adversary proceeding.

### A.  Sanchez's request for Waters was not an unambiguous request for an attorney because Sanchez maintained he wanted to speak with Waters after the agents clarified that Waters is not an attorney.

"Invocation of the *Miranda* right to counsel, 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis*, 512 at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)). The request must be sufficiently clear that a reasonable

police officer in the circumstances would understand the statement to be a request for an attorney. *Davis*, 512 U.S. at 459. Officers are free to continue questioning if the statement is not an unambiguous request for counsel. *Davis*, 512 U.S. at 459. The *Davis* unambiguous standard is applied stringently. *See Davis*, 512 U.S. at 462 ("[m]aybe I should talk to a lawyer" was ambiguous); *Clark v. Murphy*, 331 F.3d 1062, 1070 (9th Cir. 2003) ("I think I would like to talk to a lawyer" was ambiguous); *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995) (statement by juvenile's mother that "maybe he ought to see an attorney" was ambiguous).

Here, Sanchez's request for Waters was not an unambiguous request for an attorney. Sanchez's initial statement, "won't I get a lawyer," is insufficient under *Davis* and *Clark* because of the striking similarity between "won't I get a lawyer" and "maybe I should talk to a lawyer" or "I think I would like to talk to a lawyer." At that point, the agents were under no obligation to cease questioning. *Davis*, 512 U.S. at 459. Nonetheless, the agents did cease questioning Sanchez and asked him who his lawyer was. Sanchez responded Waters was his lawyer. The agents clarified that Waters is "not a lawyer . . . he's a lay advocate," to which Sanchez responded "yeah." The agents asked "so is Joe who you want," to which Sanchez responded "I don't know, yeah." A reasonable officer under these circumstances would not understand Sanchez's request to be for an attorney because Sanchez

maintained he wanted Waters after the agents clarified that Waters is not an attorney. *Davis*, 512 U.S. at 459.

**B.    Sanchez's waiver of his *Miranda* rights was voluntary, knowing, and intelligent because he read and signed a statement of rights and waiver in each interview, the agents told him he could stop at any time in each interview, and he had the assistance of lay advocate Waters.**

An effective waiver of *Miranda* has two components. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). First, the waiver must be voluntary. *Moran*, 475 U.S. at 421. Second, the waiver must be knowing and intelligent. *Moran*, 475 U.S. at 421. The Court must consider the totality of the circumstances involved and their effect upon the will of the defendant. *Crawford*, 372 F.3d at 1060.

### 1.    Voluntariness

A confession is involuntary if coerced either by physical intimidation or psychological pressure. *Crawford*, 372 F.3d at 1060. In determining whether a defendant's confession was voluntary, the question is whether the defendant's will was overborne at the time he confessed. *Crawford*, 372 F.3d at 1060.

Here, Sanchez's statements were voluntary. Each time they sat down to question him, Agent Dodd and Agent Grinsell provided Sanchez with a statement of rights and advised Sanchez he could stop the interview and leave at any point. (Doc. 101-1 at 6-7; 9; 18-19; 83-84). When Sanchez asked to speak with Waters, Agent Dodd and Agent Grinsell terminated the interview and located Waters

despite no legal obligation to do so. *See Davis*, 512 U.S. at 459. Sanchez was allowed to consult with Waters—the person he asked for—even though he had no legal right to consult with anyone but an attorney. *See Fare v. Michael C.*, 442 U.S. 707, 719 (1979) (no right to consult parole officer); *see also People v. Starks*, 46 A.D.3d 1426, 1427 (N.Y. 2007) (no right to consult paralegal). Under the totality of the circumstances, Sanchez's statements were voluntary because his will was not overborne by Agent Dodd or Agent Grinswell.

## 2. Knowing and Intelligent

A waiver is knowing and intelligent if made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Moran*, 475 U.S. at 421. The Ninth Circuit applies several factors in determining whether a waiver is knowing and intelligent. *See United States v. Bautista-Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993) (whether defendant signed a written waiver); *United States v. Bernard S.*, 795 F.2d 749, 752 (9th Cir. 1986) (age); *United States v. Gonzales*, 749 F.2d 1329, 1336 (9th Cir. 1984) (whether defendant appeared to understand his rights); *Derrick v. Peterson*, 924 F.2d 813, 824 (9th Cir. 1990) (whether defendant's rights were individually and repeatedly explained to him); and *United States v. Glover*, 596 F.2d 857, 865 (9th Cir. 1979) (whether defendant had prior experience with the criminal justice system).

Here, Sanchez knowingly and intelligently waived his *Miranda* rights.

Sanchez's responses to Agent Dodd and Agent Grinsell were articulate. Sanchez read and signed a statement of rights before each interview. (Doc. 101-1 at 6-7; 9; 18-19; 83-84; Doc. 57 at 3, 7). Further, Sanchez had the benefit of consulting with Waters, a tribal lay advocate, before waiving his rights. (Doc. 101-1 at 17). When Waters was not present during the third interview, Agent Dodd individually explained Sanchez's rights. (Doc. 101-1 at 83-84). Although Sanchez was 18 and had a somewhat minor history in the criminal justice system, these facts indicate he understood his rights. Therefore, under the totality of the circumstances, Sanchez knowingly and intelligently waived his rights.

## C. Sanchez's right to counsel under the Sixth Amendment did not attach because the interviews were not criminal proceedings.

The Sixth Amendment right to counsel does not attach until a prosecution is commenced. *U.S. v. Charley*, 396 F.3d 1074, 1082 (9th Cir. 2005). In other words, it attaches "at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Charley*, 396 F.3d at 1082.

Here, Sanchez was in custody on an unrelated bench warrant. (Doc. 77-1 at 1). A prosecution against Sanchez for this crime had not commenced when he was questioned. Therefore, Sanchez's Sixth Amendment right to counsel was not violated because the right had not attached.

## IV. Conclusion

For the foregoing reasons, Sanchez's motion to suppress (Doc. 54) is

DENIED.

DATED this 5th day of January, 2017.

SUSAN P. WATTERS
United States District Judge