**LORI HARPER SUEK**
**JOHN D. SULLIVAN**
Assistant U.S. Attorneys
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone: (406) 657-6101
FAX: (406) 657-6989
Email: Lori.Suek@usdoj.gov
          John.Sullivan2@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  vs.  **DIMARZIO SWADE SANCHEZ,**  Defendant. | CR 16-82-BLG-SPW  **TRIAL BRIEF** |

The United States, represented by Assistant U.S. Attorneys Lori Harper Suek and John D. Sullivan, submit the following trial brief.

## INTRODUCTION

The defendant, Dimarzio Swade Sanchez, has been charged by indictment with first-degree murder, in violation of 18 U.S.C. §§ 1153(a), 1111, and 2.

1

**ANTICIPATED PROOF**

On April 17, 2016, Roylynn Rides Horse was at the Kirby Saloon in Kirby, Montana, with her common-law husband, Oliver Half, III. Witnesses at the Kirby Saloon told investigators that Rides Horse and Half got in an argument, after which Rides Horse asked Angelica Whiteman for a ride home to Crow Agency. Rides Horse followed Whiteman outside to a car; Half followed the women out of the bar. Whiteman called to Dimarzio Sanchez for assistance with Half. Dimarzio Sanchez confronted Half, and Half walked back into the bar. Rides Horse and Whiteman got in a car driven by Dimarzio Sanchez and four other individuals, Frank Sanchez, Larry Sanchez, Judaya Threefingers, and Sarah Firebear.

The group left the Kirby Saloon and drove to the home of Lenora Wolfname, which is also the home of Dimarzio and Larry Sanchez. Wolfname told the group to leave. Larry Sanchez remained at the residence, but the rest of the group left with Dimarzio Sanchez driving. Whiteman was the front passenger, and Frank Sanchez, Firebear, Threefingers, and Rides Horse were in the back seat.

The group drove towards Crow Agency. As they got to about the 10-mile marker on Highway 212 between Crow Agency and Busby, Whiteman began to swear at Rides Horse. Rides Horse did not respond. Whiteman then reached over the seat and began hitting Rides Horse. Whiteman told Dimarzio Sanchez to turn the car around so that she could continue to beat Rides Horse. Dimarzio Sanchez

complied and drove to Castle Rock Road, located at the 17-mile marker off Highway 212, within the boundaries of the Crow Indian Reservation.

Once they stopped, Whiteman dragged Rides Horse out of the car and continued to beat her. Dimarzio Sanchez, Frank Sanchez, and Sarah Firebear also got out of the car. At one point, Dimarzio Sanchez showed Whiteman how to strangle Rides Horse using a bandana. Rides Horse was beaten unconscious.

Dimarzio and Frank Sanchez retrieved a gas can from the trunk of the car. Rides Horse was stripped naked; Firebear stole Rides Horse's jeans. Gas was poured on Rides Horse, and she was then set on fire.

Sanchez, Whiteman, Sanchez, and Firebear left the area. Rides Horse remained in the field where she was beaten, strangled and burned for approximately fourteen hours until she was discovered and given emergency medical treatment.

Rides Horse suffered third degree burns over forty-five percent of her body. She also suffered severe frostbite on her legs. Rides Horse was hospitalized in Salt Lake until her death, on July 19, 2016.

### *FRYE/LAFLER* CONSIDERATIONS

The United States notes for the record that no formal plea offer was extended to the defendant.

## LENGTH OF TRIAL AND NUMBER OF WITNESSES

The United States anticipates calling approximately 18 witnesses during its case-in-chief and expects that the case will be submitted to the jury by Thursday, December 7, 2017.

## ANTICIPATED EXHIBITS

The following is a list of exhibits the government may seek to admit at trial.

1. Tribal enrollment certificate for Dimarzio Swade Sanchez
2. Photographs of Rides Horse at scene, at Crow Agency Hospital, and at University of Utah Burn Center
3. Photographs of Castle Rock Road
4. Photographs of vehicle
5. Photographs of Wolfname property and fire pit
6. Rides Horse's jeans
7. Surveillance camera footage from Kirby Saloon

## LEGAL ISSUES

### I.     Dying Declaration

The United States will seek admission of statements made by Rides Horse to Steve Peterson, Officer Shawn Cottingham, and Lieutenant Sharon Brown as dying declarations. Specifically, while still on Castle Rock Road, at the scene, Rides Horse told Mr. Peterson that she was beaten and asked him to help her. She then told Officer Cottingham, in response to the question what happened, that she was drinking with friends at the Saloon, and then she was attacked by a couple of Cheyenne males. While at the Crow Agency Hospital, she told Lieutenant Brown that she was at the Kirby Saloon with Oliver Half. She said she left Half at the

Saloon and drove off with two guys and three girls or the other way around. Rides Horse told Lieutenant Brown that she then remembered being near Busby. She then passed out and came to when a man who she thought was Cheyenne was choking her.

The dying declaration exception to the hearsay rule allows for the admission of a decedent's out of court statements about the "cause of circumstances" of the declarant's death, "in a prosecution for homicide" if the declarant "beleiv[es] death to be imminent." Fed. R. Evid. 804(b)(2). As explained by the United States Supreme Court in *Shepard v. United States*, 290 U.S. 96 (1933), to qualify as a dying declaration, a statement must be spoken by a declarant "without hope of recovery and in the shadow of impending death." *Id.* at 99-100. The rule does not require that the declarant explicitly say that she believes death is imminent. *Id.* It is sufficient if the declarant can sense impending death from "the nature and extent of the wounds inflicted being obviously such that he must have felt or known he could not survive." *Mattox v. United States*, 146 U.S. 151, 152(1892).

In this case, it can be reasonably inferred from the "nature and extent of the wounds inflicted" that Rides Horse had a sense of her impending death. The statements that she made to Mr. Peterson, Officer Cottingham, and Lieutenant Brown fall within the cause and circumstances of her death. The statements, in the view of the United States meet the requirements of Fed. R. Evid. 804(b)(2) and, for

that reason, the United States will seek admission of those statements.

## II.     Aiding and Abetting Theory of Liability

Aiding and abetting is not a separate and distinct offense but rather is a different theory of liability for the underlying substantive offense. *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) ("Aiding and abetting is simply one means of committing a single crime.") Consequently, the United States does not have to elect which theory of liability to present to the jury. *Id.* And a jury can convict a defendant of the offense charged regardless whether they find the defendant to be the principal or an aider and abettor, and that finding does not have to be unanimous. *United States v. Mejia-Mesa*, 153 F.3d 925, 930 (9th Cir. 1998).

The United States has submitted the Ninth Circuit Model Pattern Instructions for the offense charged—first-degree murder and the alternate theory of liability for that crime—aiding and abetting first-degree murder. It is the intent of the United States to seek conviction of the defendant under both theories of liability. The jury will then be able to convict Sanchez if they find that he committed the offense or if they find that he aided and abetted one of the other co-defendants in the commission of the offense.

//

//

//

DATED this 27th day of November, 2017.

          KURT G. ALME
          United States Attorney

          *<u>s/ Lori Harper Suek</u>*
          LORI HARPER SUEK
          Assistant U.S. Attorney