**LORI HARPER SUEK**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**James F. Battin U.S. Courthouse**
**2601 Second Ave. North, Suite 3200**
**Billings, MT 59101**
**Phone:   (406) 657-6101**
**FAX:      (406) 657-6989**
**Email:    Lori.Suek@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 16-82-BLG-SPW** |
| **Plaintiff,** | |
| **vs.** | **SUPPLEMENTAL RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION FOR NEW TRIAL** |
| **DIMARZIO SWADE SANCHEZ,** | |
| **Defendant.** | |

## INTRODUCTION

The purpose of this supplemental brief is two-fold:  to dispel any confusion about the April 16, 2016 calendar entry, and to clarify the standard for analyzing a *Brady* violation allegation in the context of a new trial motion.  In addition to this supplemental brief, the United States respectfully requests that the Court also

1

consider the *initial* responses filed by the United States in opposition to this

motion.

## FACTS

The United States first learned of the April 16, 2016 calendar event on

December 8, 2017, the day after the close of trial.  Transcript of Motion Hearing

(Doc. 348) (RT) at 34-35.    The April 16, 2016 calendar event is entitled "Roylynn

Rideshorse" and contains the following note:

> I should have told them the truth about what I did.. Now I'm full of
> regret not of what happen but I told them what somewhat happen I
> was apart of it.. I beat her in the car a bit I kicked her on the side of
> the head I helped find the gas can. I felt so alone when I found out
> they got caught

RT at 12; Hearing Exhibit 1.  The April 16, 2016 "Roylynn Rideshorse calendar

event was first placed on the blue iPhone 5C calendar, or created, on June 22, 2016

(Mountain Standard Time).[1]  RT at 14, 90.   But because the calendar event was

modified at least once, on December 16, 2016, there is no way of knowing what

the calendar event said on June 22, 2016.  RT 19, 91-93.   Nor is there any way to

determine who wrote the June 22, 2016 calendar event or the December 16, 2016

modification.  RT 19.  As Mr. Brillhart, the defense expert, explained, this calendar

was associated with an Apple ID for Arlie Harris, but subsequent users of the blue

iPhone 5C, or remote users through Apple ID or iCloud could have created and/or

---

[1] June 23, 2016 (Universal Time Code).

modified the April 16, 2016 calendar event.  RT at 16-17.  In short, because calendar event modifications over-write the previous calendar event, there is no way of knowing what the June 22, 2016 calendar event said or who wrote it.  And although we know that the calendar event has remained the same since the December 16, 2016 modification (RT at 91), we do not know who wrote the modification.

## ARGUMENT

### I.      Sanchez suffered no prejudice from suppression of evidence related to new trial motion.

For the reasons set for in its initial responses, the United disagrees that a *Brady* violation was committed because there was no suppression of exculpatory evidence.  The focus of this supplemental brief is the prejudice prong of the analysis not because the United States concedes the violation, but rather because the United States believes clarification of what prejudice means in the context of a new trial motion is necessary.

In the usual case alleging a *Brady* violation, where evidence is suppressed pre-trial and discovered post-trial, prejudice can be equated with whether the evidence was "material," and the test is often discussed with respect to whether "had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  The Supreme Court has made clear, however, that the real question is whether the

alleged suppression "prejudiced" the defendant.  *See Strickler v. Greene*, 527 U.S.

263, 282 (1999).  This distinction is critical here because Sanchez does not allege

the United States suppressed the evidence prior to trial; there is no dispute that the

United States was unaware of the calendar entry at issue until the day after the trial

concluded.  Accordingly, the question of whether Sanchez was prejudiced by any

suppression of evidence by the United States is not how the evidence would have

been useful as impeachment if it hypothetically had been available at a trial that

occurred before it was discovered.  *See In re Masterson*, 638 Fed. Appx. 320, 327-

28 (5th Cir. 2016) ("[Defendant] points to no authority for the proposition that a

prosecutor has a duty to turn over subsequently discovered information about a

witness related to events that had not yet occurred at the time of trial but would

nevertheless, if a time machine were available, be useful to impeach the witness's

credibility." (Emphasis in original)).  Instead, the question is whether the defendant

suffered any prejudice from the alleged delay in disclosing the evidence after it

was discovered.  *See Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997)

("Because the prosecution in this case did not obtain the evidence until after trial,

the proceeding upon which the third element must focus is on the new trial motion,

not the trial itself.").  *Smith v. Roberts* provides a clear explanation of the

difference.

  In *Smith*, which came to the Tenth Circuit on habeas review, the defendant

was convicted of aggravated indecent liberties with a child in violation of Kansas law, based primarily on the testimony of the victim and her mother. *Id.* at 819. After trial and sentencing, but while the conviction was on direct appeal, the state learned that both witnesses admitted that a neighbor had also abused the victim, contradicting their trial testimony. *Id.* The court held that "because the State did not learn the testimony was false until after trial, prompt disclosure would only have allowed [the defendant] to move the state courts to consider it in a motion for new trial." *Id.* at 820.   The court then considered "the delay in disclosure," which required the defendant "to use the information as the basis for a request for post-conviction relief" rather than a motion for retrial. *Id.* The court made clear that in analyzing the prejudice, or "materiality," prong of *Brady* analysis, the "proceeding" at issue was the new trial motion, not the original trial. *Id.* The court concluded there was no prejudice because the denial of post-conviction relief, which is the functional equivalent of a hearing on a new trial motion, established that "the evidence was not material to the available post-trial proceedings." *Id.*

In this case, there is even less potential for prejudice. As noted in the United States' responsive brief, defendant has three years from his conviction to move for a new trial. Doc. 307 at 13 n.6. He can, and indeed has, made such a motion based on the calendar entry. Accordingly, he cannot show any prejudice resulted from the alleged delay in disclosure.

## II.      Sanchez is not entitled to a new trial.

It bears repeating that to obtain a new trial based on newly discovered evidence, the evidence cannot be cumulative or merely impeaching, and it must indicate that the defendant would probably be acquitted.  *United States v. Berry*, 624 F.3d 1031, 1042 (9th Cir. 2010) (internal quotation marks omitted).   Sanchez cannot meet this burden.  If anything, the calendar entry is inculpatory, cumulative, or impeaching for another defendant or person present during the assault and murder.  If Whiteman, Frank Sanchez, Firebear, or Threefingers produced the calendar entry, its admission at trial would have simply been cumulative or impeachment material against them.  All four were subjected to extensive cross-examination during trial because Dimarzio Sanchez's defense centered on shifting responsibility to the other individuals present during the assault.  "[N]ewly discovered evidence to impeach a government witness does not warrant a new trial when the evidence would not have affected the jury's assessment of the witness' credibility and when the witness was subjected to vigorous cross-examination." *United States v. Endicott*, 869 F.2d 452, 456 (9th Cir. 1989).

Additionally, whether the note would have been admissible as evidence during trial is far from certain as well.  Unless one of the codefendants, Firebear, or Threefingers admitted to producing the entry, laying foundation and authenticating

6

a calendar entry by an unknown individual on an unknown date on a phone

possessed by numerous individuals over a number of years, and a calendar that

could be accessed remotely, would have bordered on impossible.

Sanchez argues that Judaya Threefingers wrote the April 16, 2016 calendar

entry. He supports this argument with evidence that connects Threefingers to a

July 4, 2016 calendar event created on June 25, 2016. RT at 14-15. Threefingers

admitted when interviewed that she did engage in text messaging regarding the

subject matter of the July 4, 2016 calendar event, and may have written the

calendar event. RT at 53. Consequently, the temporal proximity of the two

calendar events, in Sanchez's view, settles the question of who wrote the April 16,

2016 calendar entry retrieved from the iPhone. The problem with this argument is

that both calendar events were modified on December 16, 2016, which means that

we do not know how the calendar events read on June 22, 2016 and June 25, 2016,

respectively. It could be that the original April 16, 2016 calendar event stated

nothing more than "Tax Day" before the December 16, 2016 modification.

Complicating Sanchez's assumption further is Special Agent Matt Salacinski's

testimony questioning the validity of the dates and times of the calendar events

reflected on the iPhone because of its poor condition, and the fact that it was

operating only through Wi-Fi rather than a SMS card. RT 91- 92. Mr. Brillhart

never examined the iPhone. RT at 19. Further, because, as explained by Brillhart,

entries on the calendar could be made remotely, there is simply no credible way of establishing that Judaya Threefingers placed either calendar entry on the blue iPhone.

In sum, regardless whether the calendar entry was received in evidence or merely used for impeachment, it would not establish Sanchez's likely acquittal at trial. The calendar entry said nothing of Sanchez's conduct and, at best, could only provide cumulative evidence or impeachment material against another person present at the scene. And, finally, there is no definitive way to know when the calendar event as it now exists was written or who wrote it.

## CONCLUSION

For all of the reasons set forth in its initial responses and this supplemental brief, the United States respectfully requests that the Court deny Sanchez's Rule 33 motion for a new trial.

DATED this 25th day of October, 2018.

KURT G. ALME
United States Attorney


*/s/ Lori Harper Suek*
LORI HARPER SUEK
Assistant U.S. Attorney